IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 1:23-cv-11085-RGS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

WENEEDAVACATION.COM, LLC,

    Defendant.

_____

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this memorandum in support of its Motion for Partial Summary Judgment, and states as follows:

**ARGUMENT**

**I. Legal Standard**

A motion for summary judgment forces a court to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal

1

a "genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. See id. Disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

**II. Plaintiff is Entitled to Summary Judgment on its Claim for Copyright Infringement**

    *A.    Elements of Copyright Infringement*

Counts I of the Complaint asserts a claim for copyright infringement of one (1) photograph against Defendant. "To establish a prima facie case of copyright infringement, two elements must be proven: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Latin Am. Music Co. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

    *B.    Ownership of a Valid Copyright*

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c). Here, the Complaint alleges that the Work was not registered until later than five (5) years from first publication. The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See Broad. Music v. Rockingham Venture, 909 F. Supp. 38, 43 (D.N.H. 1995) ("In this case the plaintiffs have submitted photocopies of the certificates of copyright registration for the musical compositions at issue…. The defendant has not responded with evidence, such as untimely registration…, to rebut the presumption of copyright ownership and validity, and compliance with the formalities of the Copyright Act. The court finds that there exists no genuine dispute of material fact regarding originality and authorship or copyright compliance and, therefore, the first two elements of

copyright infringement have been established as a matter of law."). As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not forbid a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision. The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.[1] Defendant has not produced any evidence to challenge Plaintiff's registration/ownership of a valid copyright.

### C. *Copying of Constituent Elements*

The copying element of an infringement claim has two components. Dunn v. Brown, 517 F. Supp. 2d 541, 544 (D. Mass. 2007). "First, Plaintiff must offer proof that, 'as a factual matter, the defendant copied the plaintiff's copyrighted material.'… Next, a plaintiff must demonstrate that 'the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar.'" Dunn v. Brown, 517 F. Supp. 2d 541, 544 (D. Mass.

---

[1] See Complaint at Exhibit A.

3

2007). "Substantial similarity exists between the defendant's work and the protected aspects of the plaintiff's work when the copying at issue 'is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.'" Hirsch v. CBS Broad. Inc., 2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017) (quoting Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 75 (2d Cir. 1997)). "The qualitative component [of substantial similarity] concerns the copying of expression." Ringgold, 126 F.3d at 75. To determine the qualitative component, courts apply the "average lay observer" test. Hirsch, 2017 U.S. Dist. LEXIS 123468, at *8; Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 108-09 (2d Cir. 2001); Ringgold, 126 F.3d at 77. Here, Defendant has admitted to displaying substantially all of the Work on its website[2]. Specifically, the Work was displayed on Defendant's website that it solely controls and publishes on,[3] as part of an assortment of photographs it created,[4] without a license or consent from Plaintiff.[5] Defendant attempts to differentiate the Work with the collection of photographs it displayed on its website by labeling the collection as "Cape Cod Dinner Company Work" ("CCDC Work"),[6] and claiming it simply encompasses a portion of the Work. It appears Defendant's argument is that because it did not solely display the Work but included it in a collection of photographs, that it is therefore not the same. However, it is evident that Defendant's infringement is substantially similar. In fact, Defendant repeatedly concedes that Plaintiff's work is contained within the CCDC Work, that it compiled itself and subsequently displayed on its website.[7] Further,

---

[2]  See Reese Tr., at 27:19-22, 54:13-16. See also Defendant's Responses to Request for Admissions at ¶ 3-12. See Defendant's Responses to Interrogatories at ¶ 8 and 9.

[3]  See Reese Tr. at 9:18-25, 19:3-8, 27:19-22, 30:14-20, 31:1-5, 54:13-16. See also Defendant's Responses to Request for Admissions at ¶ 1-2. See Defendant's Responses to Interrogatories at ¶ 3.

[4]  See Reese Tr. at 33:21-25, 63:11-21.

[5]  See Reese Tr. at 37:19-25, 38:1-3, 55:12-15, 60:2-7. See also Defendant's Responses to Request for Admissions at ¶ 13-14.

[6]  See Defendant's Responses to Interrogatories at ¶ 2, 8, and 9.

[7]  See Reese Tr. at 30:14-20, 31:1-5, 33:21-25, 63:11-21. See also Defendant's Responses to Request for

looking at the photographic collection displayed on Defendant's website, it is evident that the average lay observer would find, at least half of the Work being displayed to be substantially similar. Consequently, it is not in dispute that Plaintiff owns a valid copyright and Defendant copied the copyrighted work.

### D.  *Defendant's Affirmative Defenses*

"Because Defendant bears the burden of proof on its affirmative defense, at summary judgment, Defendant must demonstrate the absence of a genuine dispute of material fact on the elements of its affirmative defense." Crenshaw v. City of Wetumpka, No. 2:15-CV-413-WKW, 2017 U.S. Dist. LEXIS 163940, at *12-13 (M.D. Ala. Sep. 29, 2017). Here, Defendant purports to assert six (6) affirmative defenses.

Defendant asserts a litany of defenses ranging from laches to time-bar to fair use. Despite asserting these various affirmative defenses, Defendant is unable to articulate a basis for any of them, with the exception of a flawed understanding of the Fair Use Doctrine.

#### 1.  *Defendant's First Affirmative Defense*

With respect to Defendant's first affirmative defense, Defendant relies on its flawed understanding of the Fair Use Doctrine and what it permits. "To determine whether a particular use is 'fair,' the statute sets out four factors to be considered: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 143 S. Ct. 1258, 1273-74 (2023). Defendant argues that its use is non-

---

Admissions at ¶ 3-12. See Defendant's Responses to Interrogatories at ¶ 8-9.

5

commercial, as Cape Cod Dinner Company has been "defunct" for over 5 years and there could be no commercial benefit from its use. Defendant misses the point. First, whether Defendant actually profited from its display of the Work is not the relevant test. As the Court in <u>Von Der Au v. Michael G. Imber, Architect, PLLC</u>, No. SA-20-CV-00360-XR, 2021 U.S. Dist. LEXIS 55298, at *11 (W.D. Tex. Mar. 24, 2021) stated:

> The parties miss the issue. The Supreme Court has noted that '[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.' <u>Harper & Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 562 (1985). Here, Defendant asserts that the Website, www.michaelgimberblog.com, is intended to be used for educational purposes, while the Defendant promotes its architectural services at a separate website, www.michaelgimber.com. Imber Decl. ¶¶ 2, 4. Even though the Defendant did not produce the Photograph for individual sale or profit, it surely stood to profit indirectly from the publicity gained by publication of a blog that used the Photograph. That is, increased patronage of the blog is likely good for Defendant's for-profit business, and the use of the Photograph is likely intended to increase web traffic to the blog. Such use is commercial in character.

Second, and perhaps more important, is the fact that Defendant's use of the Work was unequivocally commercial in nature as Defendant was paid by Cape Cod Dinner Company to assemble the various photographs in the collage (including the Work) for purposes of advertising Cape Cod Dinner Company's business. That Cape Cod Dinner Company is now "defunct" does not somehow transform Defendant's use of the Work or its motivations for having displayed the Work in the first place. To be clear, Defendant's use of the Work was not educational, to report on the news, or for any purpose traditionally tied to a fair use analysis – it was a for-profit use to advertise a for-profit business… the core of Defendant's business itself.

Defendant also argues the infringement is transformative because (1) the use only includes a portion of the Work and (2) the depiction of a "common American dish" entitles Plaintiff to a

"narrow scope of protection."[8] While it is true that Defendant cropped a portion of the Work and inserted an overlay of "Cape Cod Dinner Company" over the photograph, the point remains that substantially all of the photograph remains and is easily recognizable as a duplicate of the Work. See Hirsch v. CBS Broad. Inc., 2017 U.S. Dist. LEXIS 123468, at *8 (S.D.N.Y. Aug. 4, 2017) ("[E]ven though a fair amount of the Photo is cropped out, the average lay observer would recognize it as a copy.") (quoting Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 75 (2d Cir. 1997). The fact that the Work depicts a "common American dish" does not somehow mean that its use is "fair" in the context of the Copyright Act. The use was either fair or it was not. Here, the Work was created to be part of Plaintiff's library of food photography for purposes of its paying clients/customers advertising their respective businesses. Defendant utilized the Work to advertise the business of one of its paying clients/customers – there is nothing transformative about utilizing a copyrighted work for the same purpose as it was created.

Defendant's responses to Plaintiff's interrogatories do not purport to address the second fair use factor (nature of the Work). However, Plaintiff's library of photographs was created over a 15–20-year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images

---

[8] See Defendant's Responses to Interrogatories at ¶ 10.

before identifying 1-2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising. Aptly, the Work is *not* common by any means. Even if the subject of the Work is common, that does not take away from the validity of its copyright or somehow support Defendant's fair use argument. Indeed, as stated by the court in Maui Jim v. Smartbuy Guru Enters., 459 F. Supp. 3d 1058, 1102 (N.D. Ill. 2020):

> Courts have found that photographs, even if taken partly for informative purposes, can still be creative. See, e.g., Balsley v. LFP, Inc., 691 F.3d 747, 760 (6th Cir. 2012) (finding that amateur photograph of a wet t-shirt contest had "a mixed nature of fact and creativity"); Kelly v. Arriba Soft Corp., 336 F.3d 811, 820 (9th Cir. 2003) ("Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature."). Even photographs of "mundane articles of furniture" have been found to have a creative nature for copyright purposes. See Ashley Furniture Indus., Inc. v. Am. Signature, Inc., No. 2:11-CV-427, 2014 WL 11320708, at *9 (S.D. Ohio 2014) ("although the copyrighted photographs at issue in this case depict comparatively mundane articles of furniture, they are at least as creative as the surreptitious grab shot at issue in Balsley.").

In that case, the court concluded that the photographs at issue (of Maui Jim sunglasses) were sufficiently creative to meet the minimum threshold: "although the 93 Photographs are mundane depictions of Maui Jim's sunglasses, we find that the process of creating those photographs necessarily included decisions about lighting, camera angle and distance, shadowing, and post-production editing. Additionally, creative judgment was necessarily exercised in selecting which photographs to use on Maui Jim's advertisements." Id. Given the "minimal degree of creativity" required for copyright registration, this factor clearly does not support Defendant. See, e.g., Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 362 (1991).

The third factor likewise does not support Defendant for the reasons discussed above – namely, Defendant utilized a substantial portion of the Work that is clearly identifiable from a comparison to the Work.

Finally, Defendant asserts that there is no effect on the potential market by Defendant's use of the Work because Plaintiff "appears to be primarily in the business of collecting profits by threatening … lawsuits rather than licensing."[9] Defendant does not cite any evidence in support of such proposition as none exists. As set forth in the Jones Decl., Plaintiff is in the business of licensing its photographic library, and the unauthorized use of those photographs does disturb the semi-exclusivity offered by Plaintiff. Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

It is Defendant's burden to establish its fair use defense, however, in light of the four factors, Defendant's use of the Work on its for-profit website is clearly outside what would constitute fair use. Specifically, Defendant's use of the Work on its website does not serve a nonprofit, educational purpose, as its use is clearly commercial; Defendant's use of the Work is not transformative and, instead, a mere superseding use of it; Defendant displayed the Work; and Defendant's use causes harm to Plaintiff's potential market for the Work. Considering all four factors together, the Court should find that Defendant's use of the Work was not fair.

### 2. *Defendant's Second Affirmative Defenses*

---

[9] Id. at ¶ 10.

Defendant's second affirmative defense is that Plaintiff's claim for copyright infringement is barred by the statute of limitations. According to Defendant, because its conduct occurred more than three years before the filing of this lawsuit, Plaintiff is barred from pursuing its claim. Defendant is incorrect. Here, Defendant is arguing for application of an "injury" rule to measure accrual of claims under the Copyright Act. The First Circuit, however, (as with all other Circuit courts to consider the issue) applies a "discovery" rule – i.e., claims begin to accrue when a plaintiff discovers or should have discovered the infringement. See D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 2021 DNH 26, 516 F. Supp. 3d 121, 132 (Jan. 28, 2021) ("Most courts—including the First Circuit—use the discovery rule rather than the injury rule for purposes of § 507(b).") (citing Warren Freedenfeld Assocs. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008)).

Here, the only relevant and undisputed fact is that Plaintiff discovered the infringement on May 9, 2022, after conducting an established research process that occurs on a rotating basis.[10] This process consists of reverse google image searches of over 18,000 photographs, making any allegation that Plaintiff "knew or reasonably should have known," absurd. "Copyright owners do not have a general duty to police their copyrights." PK Music Performance, Inc. v. Timberlake, No. 16-CV-1215 (VSB), 2018 U.S. Dist. LEXIS 169652, at *23 (S.D.N.Y. Sep. 30, 2018); see also Design Basics, LLC v. Chelsea Lumber Co., 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("The Court… rejects Defendants' argument that Plaintiff was under a continuous duty to police its copyright and concludes that Defendants have not pointed to evidence of any storm warnings that would reasonably have put Plaintiff on inquiry notice of the claimed infringement more than three years prior to filing suit."). In PK Music Performance, Inc., the defendant sought dismissal of a copyright infringement claim on the basis that the plaintiff

---

[10] See Plaintiff's Responses to Interrogatories at ¶ 4 and 5.

should have discovered its alleged infringement no later than 2007 – yet the plaintiff alleged it did not discover such until 2015 (some 8 years later). Notably, PK Music Performance, Inc. is not an anomaly – every court to consider the issue has held that a copyright owner is not required to scour the internet/search for potential infringements of his/her work.[11]

Defendant cannot not cite any 'storm warnings' or frankly *any* facts – other than the publication date of its webpage – suggesting that Plaintiff somehow 'should have' discovered Defendant's infringement on an earlier date. Defendant cannot provide any explanation as to *why* Plaintiff should have discovered the infringement on an earlier date or that Plaintiff was somehow notified of the infringement (e.g., being 'tagged' in a social media post, being sent a copy of the webpage via e-mail, etc.) and ignored such notice. Such is fatal to any statute of limitations defense for which Defendant bears the burden.

### *3. Defendant's Third Affirmative Defense*

Defendant's third affirmative defense is that Plaintiff did not own the copyright in the Work and therefore lacks standing to pursue the claims in this lawsuit. Here, Defendant has acknowledged and affirmed that Plaintiff is the rightful and true owner of the work,[12] and has not provided any evidence to the contrary. Further, as explained above, Plaintiff has proffered the copyright registration certificate pertaining to the Work and the sworn declaration of Rebecca Jones as to same.

### 4. *Defendant's Fourth Affirmative Defense*

---

[11] See e.g., Hirsch v. Rehs Galleries, Inc., No. 18-CV-11864 (VSB), 2020 U.S. Dist. LEXIS 32926, at *3 (S.D.N.Y. Feb. 26, 2020) (denying motion to dismiss photographer's copyright infringement claim on asserted basis that photographer 'should have' discovered the infringement earlier); Minden Pictures, Inc. v. Conversation Prints, LLC, No. 20-12542, 2022 U.S. Dist. LEXIS 179602, at *9 (E.D. Mich. Sep. 30, 2022) ("Copyright holders do not have a general duty to scour or police the internet to determine if their work has been infringed. The discovery rule has been met by Plaintiff since it discovered the infringement in 2019.").

[12] See Reese Tr., at 374:5-17.

Defendant's fourth affirmative defense is that Plaintiff failed to enforce its purported copyright interest in the Work and therefore abandoned its rights. This defense is somewhat ironic given Defendant's inverse argument that Plaintiff over-pursues alleged infringers in an effort to extract settlements. Here, Defendant points to its identification of "third-party documents" that show use of Plaintiff's Work in use and declares there is no evidence that the use was authorized.[13] Defendant, again, misunderstands the law. To assert a defense of abandonment, Defendant must provide evidence of or point to an overt act demonstrating Plaintiff's intent to abandon its copyright. See John G. Danielson, Inc. v. Winchester-Conant Props., 186 F. Supp. 2d 1, 24 (D. Mass. 2002) ("Abandonment operates as a legal defense to a claim of infringement, however, 'only if there is an intent by the copyright proprietor to surrender rights in his work'… This proposition has been taken by courts to require an "overt act" manifesting an intent to abandon the copyright."). See also Rimini St. v. Oracle Int'l Corp., 473 F. Supp. 3d 1158, 1201 (D. Nev. 2020) ("What is clear, however, is that the copyright holder does not abandon its rights to its copyright by mere inaction."). Defendant cannot point to any evidence that Plaintiff has surrendered its rights in the Work or any other photograph in its library. That the Work may also be displayed on some other website (whether an infringement or an authorized use) is not somehow indicative of abandonment. Defendant's position is tantamount to a finding of abandonment if a plaintiff does not sue each and every alleged infringer on the same day – otherwise, any infringer who is sued could argue that, because other infringers exist, a plaintiff has abandoned its rights. Such is clearly not the law, nor has it ever been.

### 5. *Defendant's Fifth Affirmative Defense*

---

[13] See Defendant's Responses to Interrogatories at ¶ 17.

Defendant raises laches as its fourth affirmative defense. Here, Defendant seemingly ignores that the US Supreme Court has held that laches is not a proper defense to a copyright infringement action. See Petrella v. MGM, 572 U.S. 663 (2014) (explaining that laches cannot be invoked to bar legal relief in the face of the statute of limitations enacted by Congress).

6. *Defendant's Sixth Affirmative Defense*

Defendant's Sixth Affirmative Defense—unclean hands and misuse of copyright laws bar the claim—allege that Plaintiff is using the Copyright Act to exact "predatory settlements" and intimidate alleged infringers through unreasonable demands. As stated by this Court, "[t]he First Circuit 'has not yet recognized misuse of a copyright as a defense to infringement.' Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 65 (1st Cir. 2012), quoting Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 21 n.7 (1st Cir. 2005)."[14] Nonetheless, Defendant misunderstands its own affirmative defense. As explained in Broad. Music v. Hampton Beach Casino Ballroom, Civil No. 94-248-B, 1995 U.S. Dist. LEXIS 13103, at *16-17 (D.N.H. Aug. 30, 1995):

> Copyright misuse occurs when a copyright owner restrains competition in the sale of an item that is not within the scope of the privilege granted under the copyright. Lasercomb Am. Inc. v. Reynolds, 911 F.2d 970, 975 (4th Cir. 1990) (discussing Morton Salt Co. v. G.S. Suppiger, 314 U.S. 488, 86 L. Ed. 363, 62 S. Ct. 402 (1942)); cf. United Tel. Co. v. Johnson Publishing Co., 855 F.2d 604, 610 (8th Cir. 1988) (discussing patent misuse and its application in copyright context). A defendant may prove copyright misuse by either proving (1) a violation of the antitrust laws; or (2) that BMI otherwise illegally extended its monopoly or violated the public policies underlying the copyright laws. Lasercomb, 911 F.2d at 978 (attempted use of copyright to violate antitrust law would give rise to misuse defense, but is not required to state such a defense); National Cable Tel. Ass'n v. Broadcast Music, Inc., 772 F. Supp. 614, 652 (D.D.C. 1991); Coleman v. ESPN, Inc., 764 F. Supp. 290, 295 (S.D.N.Y 1991) (misuse defense prevents copyright owner

---

[14] See D.E. 29

from recovering for infringement where owner impermissibly extended monopoly in manner equivalent to unreasonable restraint on trade).

Here, Defendant has provided no evidence that Plaintiff violated any antitrust laws nor illegally extended its "monopoly." Moreover, a copyright owner has the exclusive right to enforce its copyrights and pursue claims for infringement. See 17 U.S.C. § 501. See Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc., 300 F. Supp. 3d 1356, 1374 (D. Kan. 2018) (quoting Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6 (N.D. Ill. June 9, 2014)) (filing a large number of lawsuits or attempting to settle a large number of claims "is what the holders of intellectual property rights do when they are faced with mass infringement."); see also Harrington v. 360 ABQ, LLC, No. 1:22-cv-00063-KWR-JHR, 2022 U.S. Dist. LEXIS 89884, at *7 (D.N.M. May 18, 2022) (emphasis added) ("Standing alone, initiating multiple copyright infringement actions and attempting to negotiate settlements does not indicate copyright misuse or copyright trolling.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (a) granting partial summary judgment in favor of Plaintiff with respect to liability on its claim for copyright infringement and against Defendant with respect to its affirmative defenses; and (b) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: February 27, 2024.

Lauren Hausman, *pro hac vice*
CopyCat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
lauren@copycatlegal.com
(877) 437-6228
*Attorney for Plaintiff*

14

By: /s/ Lauren M. Hausman
Lauren M. Hausman, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Lauren M. Hausman

Lauren M. Hausman, Esq.